UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ERNEST KELLY HOLESTINE, Plaintiff, v. R.J. DONOVAN CORRECTIONAL FACILITY *et al.*, Defendants. | Case No.: 18-CV-2094-AJB(WVG)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND**<br><br>**[Doc. Nos. 19, 24, 25 & 41.]** |
|---|---|

Plaintiff Ernest Kelly Holestine, an inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983 claiming that his civil rights were violated when he was denied the opportunity to participate in various academic, work, and credit-earning services and programs due to discrimination against his mental disability and his placement in the R.J. Donovan Correctional Facility Enhanced Outpatient Program.

For the reasons set forth herein, it is RECOMMENDED that Defendants' Motion to Dismiss be DENIED IN PART AS MOOT and GRANTED IN PART. It is also RECOMMENDED that Plaintiff's Motion for Leave to File an Amended Complaint be GRANTED.

## I. FACTUAL ALLEGATIONS[1]

Plaintiff is an inmate at the R.J. Donovan Correctional Facility ("Donovan") and suffers from mental illness. (Doc. No. 1 at 2, 4.) At the time of the events described in his Complaint, Plaintiff was placed in the Enhanced Outpatient Program ("EOP") at Donovan.[2] (*Id.* at 5.)

On August 4, 2017, Plaintiff met with his Interdisciplinary Treatment Team and expressed a desire to be enrolled in a college program and to be assigned as a literacy tutor at Donovan. (*Id.* at 8.) Enrollment in the voluntary college program required one of the following: (1) a high school diploma; (2) a G.E.D. certificate; or (3) a 10.0 grade level of achievement in reading comprehension, vocabulary, and general mathematics on the Tests of Adult Basic Education ("TABE").[3] (*Id.* at 5.) In order to purchase, receive, or possess college correspondence courses, Plaintiff had to obtain approval from Defendant Mondet, who was the Supervisor of Correctional Education Programs, and be enrolled in the Facility "C" Voluntary Education Program. (*Id.* at 19.)

Assignment as a literacy tutor required one of the following: (1) a high school diploma; (2) a G.E.D. certificate; or (3) the demonstration of tutoring skills as observed by an education staff member and training in a structured literacy tutor program. (*Id.* at 5-6.)

---

[1] For purposes of Defendants' Motion to Dismiss, the facts below reflect the allegations in Plaintiff's Complaint.

[2] The EOP "is for inmates with acute onset or significant decompensation of a serious mental disorder" and who are "unable to function in the general prison population." *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1075 (E.D. Cal. 2014) (internal quotations and citation omitted).

[3] Plaintiff scored a 12.9 grade level on the Level "A" battery TABE on March 15, 1996. (Doc. No. at 5-6.) However, on October 8, 1997, Plaintiff was administered the Level "M" battery TABE and scored a 9.9 grade level equivalency in reading, math, and language. (*Id.* at 17.)

Plaintiff had previously worked as a literacy tutor and participated in college courses while incarcerated at a different prison facility. (*Id.* at 6.)

Plaintiff's Treatment Team endorsed his request to enroll in the college program and to be assigned as a literacy tutor. (*Id.* at 8.) The Treatment Team accordingly issued a statement that Plaintiff was cleared to participate in the programs while continuing to be treated in the EOP. (*Id.*)

On August 14, 2017, Plaintiff met with the Donovan Unit Classification Committee ("UCC"), which included Defendants Bracamonte and Khder. (*Id.*) Plaintiff alleges that Khder—the Facility "C" Voluntary Education Program Academic Instructor—told the UCC that Plaintiff should not be approved for participation in the Voluntary Education or Literacy Tutor programs because it was "too hard to coordinate college classes and EOP groups." (*Id.*) Plaintiff further alleges that Defendant Khder stated that Plaintiff's TABE reading score listed in the Strategic Offender Management System was only 9.9 and that a 10.0 grade level was required to participate in the voluntary college and tutor programs. (*Id.*) Plaintiff then told the UCC that his actual TABE reading score was at a 12.9 grade level and that he already had college experience. (*Id.* at 8-9.)

The UCC provisionally approved Plaintiff for participation in the voluntary college program, conditioned upon Plaintiff agreeing to be re-administered the TABE reading exam and producing his academic records for review by Defendant Khder. (*Id.* at 9.) However, the UCC did not approve Plaintiff for assignment as a literacy tutor. (*Id*.)

Plaintiff alleges that Defendant Khder deliberately refused to comply with the UCC's recommendations as follows: (a) refusing to register Plaintiff in the Education Classroom Attendance Tracking System, the Strategic Offender Management System, or the Facility "C" Voluntary Education Program College program; (b) refusing to arrange for Plaintiff to be added to the Master Pass List or to be issued Inmate Passes to gain physical access to the Education Compound; (c) refusing to arrange for Plaintiff to be re-administered the TABE reading exam; and (d) refusing to allow Plaintiff to register for college correspondence courses. (*Id.*)

On October 19, 2017, Plaintiff submitted an Inmate Appeal in which he complained that he was being unreasonably excluded from the voluntary college and tutor programs due to his placement in the EOP and incorrect TABE scores. (*Id.*) Plaintiff also requested that he be allowed to register for college correspondence courses, that Donovan re-examine its ADA policies, and that his Strategic Offender Management System education file be updated. (*Id.*)

On November 7, 2017 and December 19, 2017, Defendants Paramo, Juarez, and Bonilla issued the First Level Response and the Second Level Response, respectively, for Plaintiff's inmate appeal. (*Id.* at 10.) The appeal was denied on the basis that Plaintiff's TABE score was too low to participate in the voluntary college program or for assignment as a literacy tutor. (*Id.*)

On March 22, 2018, Plaintiff was re-administered the TABE and received a 12.9 grade level reading score. (*Id.*) On March 26, 2018, Plaintiff again appeared before the UCC, which included Defendants Bracamonte and Mendez, for his annual review. (*Id.*) Plaintiff requested that he be approved for assignment as a literacy tutor. (*Id.*) However, the UCC denied Plaintiff's request and removed him from the voluntary college assignment list. (*Id.*)

On July 3, 2018, Plaintiff's assigned clinician, Dr. Marquez, issued a CDC-128 Healthcare Chrono indicating that Plaintiff had been cleared by the EOP mental health staff for program assignments in both educational and work-incentive positions. (*Id.*)

On July 11, 2018, Defendants Voong and Murphy issued a Third Level Response, denying Plaintiff's inmate appeal. (*Id.*) Defendants Voong and Murphy acknowledged that Plaintiff was otherwise qualified to participate in the college and tutor programs but that Plaintiff's placement in the EOP unit and his therapeutic activities might take precedent over other programs. (*Id.*) Plaintiff alleges that Defendants deliberately failed to conduct a fact-specific investigation to gather sufficient information from qualified experts to determine what constituted a reasonable accommodation for Plaintiff's mental disability. (*Id.*)

On July 17, 2018, Plaintiff met with his Interdisciplinary Treatment Team for a ninety-day review. (*Id.*) During the meeting, Plaintiff requested that he be provided reasonable accommodation to allow him to be assigned as a literacy tutor and to participate in the voluntary college program. (*Id.*) The Treatment Team endorsed Plaintiff's request. (*Id.*)

Following the Interdisciplinary Treatment Team meeting of July 17, 2018, Plaintiff made numerous attempts to be allowed to participate in the college and tutor programs. (*Id.*) He submitted numerous CDCR 22 request forms to Defendants Mondet and Bracamonte, the Inmate Assignments Office, Plaintiff's work supervisor, and Plaintiff's correction counselor, requesting that he be allowed to participate in the college and tutor programs. (*Id.* at 11.) Plaintiff also made numerous unsuccessful attempts to gain physical access to the Facility "C" Education Compound to discuss his available options for participating in the programs. (*Id.*)

Plaintiff brought suit on September 6, 2018, alleging seven claims against multiple defendants. Defendants filed the pending Motion to Dismiss as to three claims. (Doc. No. 19.) Defendants Murphy and Khder later joined the Motion to Dismiss. (Doc. Nos. 25, 41.) In response, Plaintiff filed a Motion for Leave to File Amended Complaint, and a Notice of Voluntary Dismissal of Fourth and Fifth Causes of Action in Initial Complaint. (Doc. No. 24.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

Generally referred to as a motion to dismiss, Federal Rule of Civil Procedure 12(b)(6) permits a party to bring a motion arguing that a complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow . . . the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Id.* at 677 (citing *Twombly*, 550 U.S. at 557). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in a complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

### B. Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

Where, as here, the plaintiff appears *pro se* in a civil rights suit, the Court also must be careful to construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Garmon v. Cnty. of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016). A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies cannot be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissal without leave to amend is not an abuse of discretion where amendment would be futile).

## III. DISCUSSION

### A. Defendants' Motion to Dismiss (Doc. Nos. 19, 25, 41)

Defendants contend that the fourth, fifth and sixth causes of action should be dismissed, arguing Plaintiff fails to allege facts to state a claim. (Doc. No. 19 at 2.)

### 1. The Complaint Should Be Dismissed Against the Entity Defendants and All Defendants in Their Official Capacities

Subject to narrow exceptions that do not apply here, the Eleventh Amendment generally bars suit against the State, its agencies, and state officials sued in their official capacities. *Krainski v. Nev. ex. rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010). Accordingly, "[a]n official sued in his official capacity has the same immunity as the state, and is entitled to [E]leventh [A]mendment immunity." *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."). Moreover, "[t]he State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ." *Dittman v. Cal.*, 191 F.3d 1020, 1025-26 (9th Cir. 1999); *see also Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (citing *Dittman*).

Here, the R.J. Donovan Correctional Facility and the California Department of Corrections and Rehabilitation have Eleventh Amendment immunity from suit. *Brown*, 554 F.3d at 752 (affirming district court's dismissal of the California Department of Corrections and Rehabilitations on Eleventh Amendment immunity grounds); *Johnson v. Millard*, No. 11CV1691-JAH(NLS), 2011 U.S. Dist. LEXIS 116874, at *4 (S.D. Cal. Oct. 7, 2011) (same as to both Donovan and the CDCR). As a result, the Complaint should be dismissed with prejudice as to these two entities.

Further, the Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court. *Pena*, 976 F.2d at 473. Therefore, to the extent Plaintiff seeks damages against Defendants in their official capacities, all such claims are barred by the Eleventh Amendment as a matter of law. Accordingly, the

Complaint should be dismissed with prejudice as to all individual defendants to the extent any claims are brought against them in their official capacities.

   2. **Claims Four and Five**

Plaintiff concedes that claims four and five should be dismissed and has filed a Notice of Voluntary Dismissal of Fourth and Fifth Causes of Action in Initial Complaint under Federal Rule of Civil Procedure 41(a). (Doc. No. 24 at 1.) Accordingly, the Court should not consider whether claims four and five should be dismissed for failure to state a claim because Plaintiff has filed a notice withdrawing those claims. (Doc. No. 19 at 2; Doc. No. 24 at 1.) As a result, Defendants' substantive arguments for dismissal are moot.

Withdrawals of less than all claims against a given defendant are governed by Federal Rule of Civil Procedure 15, which addresses amendments to pleadings. *See Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 (9th Cir. 1988). However, the Court can construe an improper request for piecemeal dismissal of claims under Rule 41(a) as a request for dismissal under Rule 15(a). *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 688-89 (9th Cir. 2005).

Here, Plaintiff's Notice of Voluntary Dismissal of Fourth and Fifth Causes of Action in Initial Complaint was improperly filed under Rule 41(a). However, in the interest of judicial efficiency and in light of Plaintiff's pro se status, the undersigned recommends that Plaintiff's Rule 41(a) filing be construed as a request under Rule 15(a) to amend the Complaint. *See Hells Canyon*, 403 F.3d at 688-89; *Corjasso v. Ayers*, 278 F.3d 874, 878 (9th Cir. 2002) ("Pro se habeas petitioners may not be held to the same technical standards as litigants represented by counsel.").

The Court RECOMMENDS that Defendants' Motion to Dismiss Plaintiff's fourth cause of action for violation of due process and fifth cause of action for deprivation of "state-created liberty interests" be DENIED AS MOOT based on Plaintiff's voluntarily dismissal of these claims.

### 3. Claim Six: First Amendment Right to Free Speech

Defendants contend that claim six should be dismissed for failure to state a claim. (Doc. No. 19 at 2.) Because Plaintiff has failed to allege facts that show Defendants denied him the ability to receive mail, and because there is no constitutional right to participate in an education program, claim six should be dismissed with prejudice.

Although the educational program Plaintiff wishes to participate in here is administered through the mail, the crux of the Complaint is that Plaintiff is unable to *participate in the educational program itself.* (*See, e.g.*, Doc. No. 1 at 9 (alleging Defendant Khder "[r]efused to allow [Plaintiff] to register for college correspondence courses."); 19 ¶¶ 100-03 (alleging that policies requiring him to be approved for the Voluntary Education Program before he enrolls in correspondence courses violate his First Amendment rights).) The educational program just happens to be facilitated through the mail.

While it is true that prisoners have "a First Amendment right to send and receive mail," *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)), the gravamen of Plaintiff's complaint is not that he has been denied the ability to receive mail. Rather, he challenges Donovan's policies that have prevented him from enrolling in correspondence educational programs. The entirety of the facts section related to his First Amendment claim focuses on these policies. (Doc. No. 1 at ¶¶ 100-03.) The fact that the particular educational program he is interested in is a correspondence course that is administered through the mail is an ancillary afterthought that briefly appears under claim six. (Doc. No. 1 at ¶¶ 127-28.)

Plaintiff cannot contrive a First Amendment claim (a weak one at that) when his actual complaint is that he is denied the ability to register for correspondence courses in the first place. As such, he fails to state a claim because prisoners do not have a constitutional right to educational programs. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973); *Johnson v. Moore*, 926 F.2d 921, 925 n.3 (9th Cir. 1991) (citing *Rodriguez*); *see Hernandez v. Johnston*, 833 F.2d 1316, 1319 (1987). Having a

9

constitutional right to receive mail is distinguishable from having a right to *participate* in mail-based *educational programs*. Plaintiff has not provided the Court with any case that establishes that inmates have a First Amendment right to participate in mail-based educational programs when they are otherwise able to receive mail. And the Court is unaware of a case that establishes such a right.

Because there is no constitutional right to participate in educational programs via the mail or otherwise, and because Plaintiff has not alleged facts related to direct infringement of his right to receive mail, the Court RECOMMENDS that claim six be DISMISSED with prejudice.

**B.  Plaintiff's Motion for Leave to File an Amended Complaint and Proposed First Amended Complaint (Doc. No. 24)**

Plaintiff has filed a Motion for Leave to File an Amended Complaint under Rule 15(a). (Doc. No. 24.) Plaintiff seeks to clarify his jurisdictional statement and to address legal arguments raised in Defendants' Motion to Dismiss. (*Id.* at 2.)[4] Plaintiff should be granted leave to amend consistent with the Court's ultimate Order on the pending motion to dismiss.

Rule 15(a)(1) of the Federal Rules of Civil Procedure allows a party to amend its pleadings once as a matter of course within "21 days of serving it," or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive

---

[4] Plaintiff's Proposed First Amended Complaint is missing pages seven, eight, seventeen, nineteen, and twenty. (*Id.* at 9-19.) The page numbers do not appear to be merely mislabeled. For example, the hand-labeled page numbers of the proposed complaint jump from page six directly to page nine. (*Id.* at 9, 10.) The last paragraph on page six is labeled as paragraph thirty-six and ends in an incomplete sentence. (*Id.* at 9.) The next available page, page nine, starts with paragraph forty-seven and begins a new sentence pertaining to facts different from the facts discussed in paragraph thirty-six. (*Id.* at 10.) As an additional example, Plaintiff's Proposed First Amended Complaint provides only a fourth and fifth cause of action and does not contain a first, second, or third causes of action. (*Id.* at 18-19.)

pleading or 21 days after service of a [motion to dismiss], whichever is earlier." The Ninth Circuit has noted "on several occasions . . . that the 'Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F[ed]. R. Civ. P., by freely granting leave to amend when justice so requires.'" *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986) (quoting *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (citations omitted). Thus, "[r]ule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citation omitted).

Here, Plaintiff technically does not need leave to amend his initial complaint, as his response to Defendant's motion under Rule 12(b) was filed within twenty-one days. *See* Fed. R. Civ. P. 15(a). However, the Civil Local Rules for the Southern District of California require that an amended complaint be complete in itself without reference to any prior pleading. S.D. Cal. Civ. L. R. 15.1(a). Therefore, Plaintiff's proposed complaint is defective because it is missing a number of pages.

If the District Court grants Plaintiff's Motion for Leave to Amend, Plaintiff is cautioned that he must submit any subsequent amended complaint as a whole document with all pages. The Court RECOMMENDS that Plaintiff's Motion for Leave to File a First Amended Complaint be GRANTED.

### IV. CONCLUSION

Based on the foregoing, this Court RECOMMENDS that:

1. Plaintiff's Notice of Voluntary Dismissal of Fourth and Fifth Causes of Action in Initial Complaint (Doc. No. 24) under Rule 41(a) be construed as a notice of voluntary dismissal of claims four and five.

2. Defendants' Motion to Dismiss be DENIED IN PART AS MOOT with respect to claims four and five.

3. Defendants' Motion to dismiss be GRANTED IN PART to the extent the Complaint is brought against any individual defendant in their official capacity and with respect to the R.J. Donovan Correctional Facility and the California Department of

Corrections and Rehabilitation—both of which should be DISMMISED from this case with prejudice.

4. Defendants' Motion to Dismiss be GRANTED IN PART and that claim six for violation of a First Amendment right to free speech against all Defendants be DISMISSED with prejudice.

5. Plaintiff's Motion for Leave to File an Amended Complaint (Doc. No. 24) be GRANTED. Plaintiff should be advised that the First Amended Complaint he files shall not include claims four, five, or six.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

**IT IS ORDERED** that no later than **August 30, 2019** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." **No reply briefs in response to the Objections will be accepted.**

**IT IS SO ORDERED.**

DATED: August 5, 2019

Hon. William V. Gallo
United States Magistrate Judge