UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ERNEST KELLY HOLESTINE, | Case No.: 18-cv-02094-AJB-WVG |
|---|---|
| Plaintiff, | **ORDER:** |
| v. | |
| R.J. DONOVAN CORRECTIONAL FACILITY *et al.*, | **(1) ADOPTING IN PART THE REPORT AND RECOMMENDATION;** |
| Defendants. | **(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND** |
| | **(3) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT** |

Presently before the Court are: (1) Defendants Richard J. Donovan Correctional Facility ("RJD"), California Department of Corrections and Rehabilitation ("CDCR" collectively with the RJD, "Entity Defendants"), D. Mendez, G. Murphy, P. Khder, P. Bracamonte, J. Bonilla, M. Voong, D. Paramo, A. Mondet, J. Juarez, and P. Chapman's ("Individual Defendants" collectively with Entity Defendants, "Defendants") motions to dismiss for failure to state a claim (Doc Nos. 19-1, 25, 41); and (2) Plaintiff Ernest Kelly Holestine's ("Plaintiff") motion for leave to file an amended complaint, and notice of

1

voluntary dismissal of his fourth and fifth causes of action. (Doc. No. 24.) On August 5, 2019, Magistrate Judge William V. Gallo issued a Report and Recommendation (the "R&R") on Plaintiff and Defendants' motions. (Doc. No. 43.) Plaintiff filed written objections to the R&R on August 26, 2019. (Doc. No. 44.) The R&R instructed the parties that no replies to the objections may be filed. (Doc. No. 43.)

For the reasons set forth below, the Court **ADOPTS IN PART** the R&R, **OVERRULES IN PART AND SUSTAINS IN PART** Plaintiff's objections to the R&R, **GRANTS IN PART AND DENIES IN PART** Defendants' motions to dismiss, **DISMISSES** Plaintiff's fourth and fifth causes of action, without leave to amend, **DISMISSES** Plaintiff's sixth cause of action, with leave to amend, and **GRANTS** Plaintiff's motion for leave to file a First Amended Complaint.

## BACKGROUND

Plaintiff is an inmate in the custody of the CDCR and incarcerated at RJD. (Complaint "Compl." ¶ 3.) The CDCR has promulgated policies authorizing eligible inmates to enroll in college correspondence courses and to work as literary tutors. (*Id.* ¶ 25–27.) Eligibility for participation in these college correspondence courses require a recommendation by the Unit Classification Committee ("UCC"), during the inmate's Initial Review hearing. (*Id.* ¶ 29.) Enrollment in the college correspondence program requires one of the following: (1) a high school diploma; (2) a G.E.D. certificate; or (3) a 10.0 grade level of achievement in reading comprehension, vocabulary, and general mathematics on the Tests of Adult Basic Education ("TABE"). (*Id.* ¶ 25.) In order to purchase, receive, or possess college correspondence courses, inmates must obtain approval from Defendant Mondet, the Supervisor of Correctional Education Programs, and be enrolled in the Facility "C" Voluntary Education Program. (*Id.* at 102.)

Plaintiff is an individual with significantly limiting mental illnesses, including major depression, obsessive/compulsive disorder, and posttraumatic stress disorder. (*Id.* ¶ 21.) As a result of his mental illnesses, Plaintiff was admitted to the Facility "C" Enhanced Outpatient Program ("EOP"). (*Id.* ¶ 24.)

On August 4, 2017, Plaintiff attended a meeting with his initial Interdisciplinary Treatment Team ("IDTT") and expressed his desire to be enrolled in a college correspondence program, and to be assigned as a literary tutor. (*Id.* ¶ 41.) The IDTT endorsed his request and the IDTT notified the staff at RJD that Plaintiff was cleared to participate in the college and work programs while he was undergoing his EOP activities. (*Id.*)

On August 14, 2017, Plaintiff met with the UCC, which included Defendants Bracamonte and Khder. (*Id.* ¶ 42.) Plaintiff appeared before the UCC to repeat his desire to be approved to participate in the RJD academic and work programs. (*Id.*) Plaintiff alleges that Defendant Khder—the Facility "C" Voluntary Education Program Academic Instructor—told the UCC that Plaintiff should not be approved for participation in the academic or work programs because it was "too hard to coordinate college classes and EOP groups." (*Id.* ¶ 43.) Additionally, Plaintiff's request to participate in the programs was denied because Plaintiff's TABE score of 9.9 grade level did not meet the minimum 10 grade level requirement. (*Id.*) Plaintiff protested that his 9.9 grade level TABE score was erroneous, and that his actual TABE score was a 12.9 grade level. (*Id.* ¶ 44.) The UCC provisionally approved Plaintiff for participation in the college program conditioned upon him (1) producing his academic records for review, and (2) agreeing to be re-administered the TABE exam. (*Id.* ¶ 45.) The UCC did not approve Plaintiff's request to work as a literary tutor. (*Id.*)

Plaintiff alleges that Defendant Khder deliberately refused to comply with the UCC's recommendations because Defendant Khder: (a) refused to register Plaintiff in the Education Classroom Attendance Tracking System, the Strategic Offender Management System, or the Facility "C" Voluntary Education Program College program; (b) refused to arrange for Plaintiff to be added to the Master Pass List or to be issued Inmate Passes to gain physical access to the Education Compound; (c) refused to arrange for Plaintiff to be re-administered the TABE reading exam; and (d) refused to allow Plaintiff to register for college correspondence courses. (*Id.* ¶ 46)

On October 19, 2017, Plaintiff filed an Inmate Appeal, asserting that he was being unreasonably excluded from the college and tutor programs due to his placement in EOP and his erroneous TABE scores. (*Id.* ¶ 48.) Plaintiff's Appeal was elevated to a First and Second Level Review, and his Appeal was denied on the grounds that Plaintiff's TABE score was too low to participate in the voluntary college program or for assignment as a literary tutor. (*Id.* ¶ 50.)

Plaintiff was re-administered the TABE test on March 22, 2018 and received a 12.9 grade level TABE score. (*Id.* ¶ 51.) Then on March 26, 2018, Plaintiff appeared before the UCC, for his annual review to report that he had complied with the UCC's instructions with regard to his academic records and TABE score. (*Id.* ¶ 52.) The UCC denied Plaintiff's request to be assigned as a literacy tutor, and Plaintiff was removed from the voluntary college assignment list. (*Id.*)

On July 3, 2018, Plaintiff's assignment clinician cleared Plaintiff for assignment in both educational and work-incentive positions. (*Id.* ¶ 54.) A week later, Defendants Voong and Murphy issued a Third Level Response, denying Plaintiff's Appeal, explaining that while they acknowledged Plaintiff was qualified to participate in the college and tutor programs, his placement in the EOP unit may take precedent over the college programs Plaintiff was interested in. (*Id.*)

Plaintiff made numerous attempts to be allowed to participate in the college and tutor programs. (*Id.* ¶ 56.) He submitted numerous CDCR-22 request forms to Defendants Mondet and Bracamonte, the Inmate Assignments Office, Plaintiff's work supervisor, and Plaintiff's correction counselor, requesting that he be allowed to participate in the college and tutor programs. (*Id.*) Plaintiff also made numerous unsuccessful attempts to gain physical access to the Facility "C" Education Compound to discuss his available options for participating in the programs. (*Id.*)

On September 6, 2018, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a Complaint under 42 U.S.C § 1983 for violations of his rights under the First and Fourteenth Amendments to the United States Constitution, and also under Title II of the Americans

with Disabilities Act ("Title II of the ADA"), 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act ("Section 504 of the RA"), 29 U.S.C. § 794(a).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district judge's duties in connection with a magistrate judge's report and recommendation. The district judge must "make a de novo determination of those portions of the report . . . to which objection is made[,]" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). However, in the absence of timely objection(s), the court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment; *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

## **DISCUSSION**

Plaintiff objects to the R&R on three grounds: (1) dismissal of Entity Defendants and Individual Defendants in their official capacity would eviscerate Plaintiff's claims under the ADA and RA, (2) the exceptions to the Eleventh Amendment apply to preclude Entity Defendants and Individual Defendants from asserting sovereign immunity for claims under the ADA and RA, and (3) Plaintiff's § 1983 claim predicated on the First Amendment should not be dismissed because he does not base his claim on a "right to education." (Doc. No. 44.)

### I. The Eleventh Amendment

First, Plaintiff contends the Magistrate Judge erred as a matter of law by dismissing Entity Defendants and Individual Defendants in their official capacities from Plaintiff's Complaint. (*Id.* at 1–3.) Essentially, Plaintiff argues in his first and second objections to the R&R that the Eleventh Amendment does not bar Plaintiff's causes of action under Title II of the ADA and Section 504 of the RA. The Complaint names Defendants in their individual and official capacities, and seeks monetary damages against them for purported

violations of § 1983, Title II of the ADA, and Section 504 of the RA. (Compl. ¶ 15.) The R&R recommended that the Court dismiss the claims against Entity Defendants and all Individual Defendants in their official capacities, because the Eleventh Amendment does not permit damages claims against state agencies and state officers in their official capacities. (Doc. No. 43 at 7–8.)

As a preliminary matter, the Court notes that it is not immediately clear from Plaintiff's Complaint and his enumerated causes of action if Plaintiff asserts all his claims against Defendants in both their official and their individual capacities. However, the Court notes that in Section VII of Plaintiff's Complaint, Plaintiff prays for relief against Entity Defendants and Individual Defendants in their **official** capacities for violation of Title II of the ADA and Section 504 of the RA, and against Individual Defendants in their **individual** capacities for their violation of "loss of liberty, deprivations of free speech, equal protection, due process of law, and other privileges." (Compl., Section VII ¶ 2–3.) Plaintiff also notes in his opposition to Defendants' motion to dismiss that while "[Plaintiff] sued the Defendants in their official capacities for [relief under the ADA and the RA], [Plaintiff] sued the Defendants in their individual capacities for [relief under the First and Fourteenth Amendments]." (Doc. No. 26 at 13.) Because Plaintiff is proceeding *pro se*, the Court will liberally construe Plaintiff's Complaint, and address Plaintiff's objections consistent with Plaintiff's assertion that Plaintiff's ADA and RA claims are alleged against Defendants in Defendants' official capacity, and Plaintiff's § 1983 claims are alleged against Individual Defendants in their individual capacity. *See Garmon v. Cnty. of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016).

The Eleventh Amendment to the United States Constitution bars all suits brought in federal court against states and their agencies in the absence of consent by the state or express abrogation by Congress within its authority. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 53–54 (1996). Additionally, the Eleventh Amendment "bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is

retroactive, i.e., money damages, rather than prospective, e.g., an injunction." *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988). It is also well-settled that neither a state agency nor state officers named in their official capacity may properly be named as a defendant in a § 1983 action. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Emma C. v. Eastin*, 985 F. Supp. 940, 946 (N.D. Cal. 1997). The Eleventh Amendment does not bar actions against state officers in their personal or individual capacities. *Pena v. Gardner*, 976 F.2d 469, 472–473 (9th Cir. 1992).

However, the Ninth Circuit has also held that Congress has effectively abrogated the states' sovereign immunity under the ADA and the RA with clear statutory language allowing suits to be brought against states. *See Lovell v. Chandler*, 303 F.3d 1039, 1051 (9th Cir. 2002); *Duffy v. Riveland*, 98 F.3d 447, 452 (9th Cir. 1996). Under the ADA, Congress expressly provided that "[a] State shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in Federal or State court . . .." *See* 42 U.S.C. § 12202. Likewise, when enacting the RA, Congress unequivocally stated its intent to abrogate the states' Eleventh Amendment immunity: "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d–7(a)(1). Therefore, a plaintiff's claim under "the ADA, and Section 504 may be maintained against the State Defendants without running afoul of the Eleventh Amendment." *Emma C. v. Eastin*, 985 F. Supp. 940, 947 (N.D. Cal. 1997). Congress's "abrogation of the states' Eleventh Amendment immunity from suit under the ADA and RA similarly precludes assertion of immunity by state officials sued in their official capacity." *Duffy*, 98 F.3d at 452 n.4.

Based on the foregoing authority, the Court concludes that Entity Defendants and Individual Defendants may be sued in their official capacities under Title II of the ADA

and Section 504 of the RA without violating the Eleventh Amendment.[1] *See Nort v. Brown*, No. 14CV1663-LAB KSC, 2015 WL 5155195, at *6 (S.D. Cal. Sept. 1, 2015) (finding in *pro se* prisoner § 1983 action that "defendants may be sued in their official capacities under Title II of the ADA and Section 504 of the Rehabilitation Act"). Thus, Plaintiff may properly assert his first and second causes of action against Defendants in their official capacity. However, to the extent Plaintiff brings claims against Entity Defendants and Individual Defendants in their official capacities under § 1983 for the violation Plaintiff's rights under the U.S. Constitution, Defendants are immune from suit under the Eleventh Amendment. *See Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009). Moreover, Plaintiff's claims against Defendants in their individual capacity for violations of § 1983 are not barred by the Eleventh Amendment. Accordingly, Plaintiff's first and second objections are **SUSTAINED**.

## II.   Plaintiff's First Amendment Claim

In Plaintiff's third and final objection, Plaintiff takes issue with the R&R's recommendation that his § 1983 claim predicated on the First Amendment be dismissed. The R&R found that "[b]ecause Plaintiff has failed to allege facts that show Defendants denied him the ability to receive mail, and because there is no constitutional right to participate in an education program, claim six should be dismissed with prejudice." (Doc. No. 43 at 9.) Plaintiff objects specifically that he does not base his First Amendment claim on the "right to education programs" but instead, the "right to purchase, receive, and/or possess college correspondence courses from persons and/or public institutions of higher learning through the U.S. Postal Service." (Doc. No. 44 at 4; Compl. ¶ 100.)

---

[1] In *Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002), the Ninth Circuit held that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Id.* at 1156. The Ninth Circuit reasoned that such claims are "barred by the comprehensive remedial scheme of those Acts." *Id.* As such, Plaintiff claims asserted under Title II of the ADA and Section 504 of the RA may be maintained against Entity Defendants, and against the Individual Defendants *only* in their official capacities.

The First Amendment applies to the states via the Fourteenth Amendment. *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2226 (2015). Incarcerated individuals enjoy "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, inmates do not have the same "full range of freedoms of an unincarcerated individual." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). "[R]estrictive prison regulations are permissible if they are reasonably related to legitimate penological interests." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987) (internal quotations omitted).

Plaintiff has not adequately stated a § 1983 claim based on the First Amendment. The Court does not disagree that "Plaintiff has a First Amendment right to receive correspondence and published reading material by incoming mail." (Doc. No. 44 at 4.) But Plaintiff has not alleged sufficient facts to show that either Plaintiff was sent specific correspondence and was subsequently denied his right to receive his mail, or that Defendants implemented a policy that denied him the ability to receive his mail. Instead, Plaintiff only attempts to save his claim by citing to case law demonstrating a generalized First Amendment right to send and receive mail. (*Id.* at 3–5.) Moreover, Plaintiff's cited authority is inapposite. None of Plaintiff's cases stand for the proposition that Plaintiff has an unconditional "right to purchase, receive, and/or possess college correspondence courses from persons and/or public institutions of higher learning through the U.S. Postal Service." (*Id.* at 4; Compl. ¶ 100.) For example, in a case relied upon by Plaintiff, *Maraglino v. Cty. of San Diego*, the plaintiff alleged "she was attempting to participate in paralegal 'correspondence classes'" and asserted "that her information package and application were rejected by unnamed jail staff ***because they were not in the form of a postcard***." *Maraglino v. Cty. of San Diego*, No. 15-CV-199-WQH-MDD, 2016 WL 11448146, at *7 (S.D. Cal. May 5, 2016), report and recommendation adopted in part, rejected in part, No. 15CV199-WQH-MDD, 2016 WL 4536741 (S.D. Cal. Aug. 31, 2016) (emphasis added). This case is not analogous to Plaintiff's case. Here, Plaintiff has failed to allege ***any*** facts demonstrating that he was prevented from receiving his mail due to

policies that unreasonably regulated the form the mail must be sent in. Plaintiff does not even allege he had incoming mail. All Plaintiff has alleged is that Defendants established criteria that must be met before an inmate may enroll in a correspondence course. Thus, while Defendants have the authority to provide educational programs in its jails, there is no statutory or constitutional requirement mandating the provision of such programs to Plaintiff. *McKinney v. Kuzirian*, 972 F.2d 1340 (9th Cir. 1992). Defendants are well within their authority to refuse to provide such programs. As such, Defendants' use of discretion in refusing to enroll Plaintiff in a correspondence course that happened to be administered through the mail is not equivalent to the withholding of Plaintiff's mail from Plaintiff. *See Brooks v. Ducart*, No. C 10-1134 PJH PR, 2010 WL 4314727, at *1 (N.D. Cal. Oct. 25, 2010) (dismissing § 1983 claim where Plaintiff asserted right to participate in education program available by mail). Plaintiff may not masquerade what is in essence a "right to education" claim as a First Amendment claim.

For these reasons, Plaintiff's objection as to his First Amendment claim is **OVERRULED**.

### III. Plaintiff's Motion for Leave to File a First Amended Complaint, and Plaintiff's Voluntary Dismissal of Fourth and Fifth Causes of Action

Lastly, having made a "de novo determination of those portions of the Report and Recommendation to which objection is made" and seeing no other objections, the Court finds the rest of the R&R well-reasoned with no clear error. As such, the Court **ADOPTS** the portions of the R&R Plaintiff does not object to. *Calderon-Silva v. Uribe*, No. SACV 09-00832 MMM JC, 2010 WL 5423732, at *1 (C.D. Cal. Dec. 21, 2010).

Based on Plaintiff's voluntary dismissal of his fourth and fifth causes of action, Defendants' motion to dismiss Plaintiff's fourth cause of action for violation of due process, and fifth cause of action for deprivation of "state-created liberty interests" is **DENIED AS MOOT**.

Furthermore, Plaintiff's motion for leave to file an amended complaint is **GRANTED**. However, the Court notes that Plaintiff's proposed First Amended Complaint

attached to Plaintiff's motion for leave to amend is incomplete and defective because it is missing various pages. (Doc. No. 24 at 4.) Therefore, Plaintiff must re-file a completed First Amended Complaint.

## CONCLUSION

Based on the foregoing, the Court **OVERRULES IN PART AND SUSTAINS IN PART** Plaintiff's objections, and **ADOPTS IN PART** the R&R.

Accordingly, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's ADA and RA claims against Defendants in their official capacity survive Defendants' motion to dismiss. Additionally, Plaintiff's § 1983 causes of action against Defendants in their individual capacity also remain.

Plaintiff's fourth and fifth causes of action, are **DISMISSED**, with prejudice, and Plaintiff's sixth cause of action is **DISMISSED**, without prejudice.

The Court **GRANTS** Plaintiff's motion for leave to file a First Amended Complaint, and Plaintiff is **ORDERED** to re-file his First Amended Complaint consistent with this order.

**IT IS SO ORDERED**.

Dated: September 30, 2019

Hon. Anthony J. Battaglia
United States District Judge