1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

13   ERNEST KELLY HOLESTINE,                Case No.:  18-CV-2094-AJB(WVG)

14                              Plaintiff,
                                            **REPORT AND**
15   v.                                     **RECOMMENDATION ON**
                                            **DEFENDANTS' MOTION TO**
16   R.J. DONOVAN CORRECTIONAL              **DISMISS AND MOTION TO STRIKE**
     FACILITY *et al.*,                     **AND PLAINTIFF'S MOTION FOR**
17                                          **LEAVE TO AMEND**
                             Defendants.
18
                                            **[Doc. Nos. 49, and 52]**
19
20
21          This action arises under 42 U.S.C. § 1983. Plaintiff Ernest Kelly Holestine, an

22   inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint claiming that RJ

23   Donovan Correctional Facility ("Donovan" or "Facility") violated his civil rights. The

24   Facility allegedly denied Plaintiff the opportunity to participate in various academic, work,

25   and credit-earning services and programs due to discrimination against Plaintiff's mental

26
27
28

                                            1
                                                                     18-CV-2094-AJB(WVG)

disability and placement in the R.J. Donovan Correctional Facility Enhanced Outpatient Program ("EOP").[1]

For the reasons set forth herein, the Court hereby RECOMMENDS that Defendants' Motion to Dismiss be DENIED IN PART AS MOOT and GRANTED IN PART.  The Court also RECOMMENDS that Plaintiff's Motion for Leave to File an Amended Complaint and to Exceed Page Limit be GRANTED.

## I.   FACTUAL ALLEGATIONS[2]

Plaintiff is an inmate at the R.J. Donovan Correctional Facility and suffers from mental illness.  (Doc. No. 1 at 2, 4.)  At the time of the events described in his Complaint, Plaintiff was placed in the Enhanced Outpatient Program ("EOP") at Donovan.  (*Id.* at 5.)

On August 4, 2017, Plaintiff met with his Interdisciplinary Treatment Team and expressed a desire to be enrolled in a college program and to be assigned as a literacy tutor at Donovan.  (*Id.* at 8.)  Enrollment in the voluntary college program required one of the following: (1) a high school diploma; (2) a G.E.D. certificate; or (3) a 10.0 grade level of achievement in reading comprehension, vocabulary, and general mathematics on the Tests of Adult Basic Education ("TABE").[3]  (*Id.* at 5.)  To purchase, receive, or possess college correspondence courses, Plaintiff had to obtain approval from Defendant Mondet, who was the Supervisor of Correctional Education Programs, and be enrolled in the Facility "C" Voluntary Education Program.  (*Id.* at 19.)

Assignment as a literacy tutor required one of the following: (1) a high school diploma; (2) a G.E.D. certificate; or (3) the demonstration of tutoring skills as observed by

---

[1] The EOP "is for inmates with acute onset or significant decompensation of a serious mental disorder" and who are "unable to function in the general prison population."  *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1075 (E.D. Cal. Apr. 10, 2014) (internal quotations and citation omitted).

[2] For purposes of Defendants' Motion to Dismiss, the facts below reflect the allegations in Plaintiff's Complaint.

[3] Plaintiff scored a 12.9 grade level on the Level "A" battery TABE on March 15, 1996.  (Doc. No. at 5-6.)  However, on October 8, 1997, Plaintiff was administered the Level "M" battery TABE and scored a 9.9 grade level equivalency in reading, math, and language.  (*Id.* at 17.)

an education staff member and training in a structured literacy tutor program.  (*Id.* at 5-6.)
Plaintiff had previously worked as a literacy tutor and participated in college courses while
incarcerated at a different prison facility.  (*Id.* at 6.)

Plaintiff's Treatment Team endorsed his request to enroll in the college program
and to be assigned as a literacy tutor.  (*Id.* at 8.)  The Treatment Team accordingly issued
a statement that Plaintiff was cleared to participate in the programs while continuing to be
treated in the EOP.  (*Id.*)

On August 14, 2017, Plaintiff met with the Donovan Unit Classification Committee
("UCC"), which included Philip Bracamonte ("Defendant Bracamonte") and Pilar Khder
("Defendant Khder").  (*Id.*)  Plaintiff alleges that Defendant Khder, the Facility "C"
Voluntary Education Program Academic Instructor, told the UCC that Plaintiff should not
be approved for participation in the Voluntary Education or Literacy Tutor programs
because it was "too hard to coordinate college classes and EOP groups."  (*Id.*)  Plaintiff
further alleges that Defendant Khder stated that Plaintiff's TABE reading score listed in
the Strategic Offender Management System was only 9.9 and that a 10.0 grade level was
required to participate in the voluntary college and tutor programs.  (*Id.*)  Plaintiff
responded by informing the UCC that his actual TABE reading score was at a 12.9 grade
level and that he already had college experience.  (*Id.* at 8-9.)

The UCC provisionally approved Plaintiff for the voluntary college program and
conditioned his participation upon his agreeing to be re-administered the TABE reading
exam and producing his academic records for Defendant Khder's review.  (*Id.* at 9.)
However, the UCC did not approve Plaintiff for assignment as a literacy tutor.  (*Id.*)

Plaintiff alleges Defendant Khder deliberately refused to comply with the UCC's
recommendations by refusing to (a) register Plaintiff in the Education Classroom
Attendance Tracking System, the Strategic Offender Management System, or the Facility
"C" Voluntary Education Program College program; (b) arrange for Plaintiff to be added
to the Master Pass List or to be issued Inmate Passes to gain physical access to the
Education Compound; (c) arrange for Plaintiff to be re-administered the TABE reading

exam; and (d) allow Plaintiff to register for college correspondence courses.  (*Id.*) Plaintiff alleges during the relevant time period, Defendant Khder approved an inmate with an 8.0 TABE reading score to register for college courses. (Doc. No. 52 at 24.)

On October 19, 2017, Plaintiff submitted an Inmate Appeal in which he complained that he was being unreasonably excluded from the voluntary college and tutor programs due to his placement in the EOP and incorrect TABE scores.  (Doc. No. 1 at 9)  Plaintiff also requested to register for college correspondence courses, that Donovan re-examine its Americans with Disabilities Act (ADA) policies, and that his Strategic Offender Management System (SOMS)4 education file be updated.  (*Id.*)

On November 7, 2017 and December 19, 2017, Defendant Paramo, Defendant Juarez, and Defendant Bonilla respectively issued the First Level Response and the Second Level Response5 for Plaintiff's inmate appeal.  (*Id.* at 10.)  The appeal was denied because Plaintiff's TABE score was too low to participate in the voluntary college program or for assignment as a literacy tutor.  (*Id.*) Plaintiff alleges he produced all of his academic records to demonstrate he was qualified to participate in the college and tutor programs, and that his original TABE score of 12.9 grade level was also on record in Plaintiff's files. (Doc. No. 54 at 25.)

On March 22, 2018, Plaintiff was re-administered the TABE and received a 12.9 grade level reading score.  (Doc. No. 1 at 10.)  On March 26, 2018, Plaintiff again appeared before the UCC, which included Defendant Bracamonte and Defendant Mendez, for his annual review.  (*Id.*)  Plaintiff requested that he be approved for assignment as a literacy tutor.  (*Id.*)  However, the UCC denied Plaintiff's request and removed him from the voluntary college assignment list.  (*Id.*)

---

4 SOMS is the California Department of Corrections and Rehabilitation's consolidated management system.

5 There are three levels of formal review for the administrative appeals process. See Cal. Code Regs. tit. 15, §§ 3084.1-3085 (2009).

On July 3, 2018, Plaintiff's assigned clinician, Dr. Marquez, issued a medical memo indicating that the EOP mental health staff for program assignments cleared Plaintiff in both educational and work-incentive positions.  (*Id.*) Defendant Coon received this memo, and Plaintiff requested that Defendant Coon schedule a hearing to consider this memo.  (Doc. No. 52 at 20.) Defendant Coon stated that Plaintiff had to wait until his next scheduled classification hearing in February 2019. (*Id.*)

On July 11, 2018, Defendant Voong and Defendant Murphy issued a Third Level Response, denying Plaintiff's inmate appeal.  (Doc. No. 1 at 10.)  Defendant Voong and Defendant Murphy acknowledged that Plaintiff was otherwise qualified to participate in the college and tutor programs but that Plaintiff's placement in the EOP unit and his therapeutic activities might take precedent over other programs.  (*Id.*)  Plaintiff alleges that Defendant Voong and Defendant Murphy deliberately failed to conduct a fact-specific investigation to gather sufficient information from qualified experts to determine what constituted a reasonable accommodation for Plaintiff's mental disability.  (*Id.*)

On July 17, 2018, Plaintiff met with his Interdisciplinary Treatment Team for a 90-day review.  (*Id.*)  During the meeting, Plaintiff requested that he be assigned as a literacy tutor and allowed to participate in the voluntary college program.  (*Id.*)  The Treatment Team endorsed Plaintiff's request.  (*Id.*)

Following the Interdisciplinary Treatment Team meeting of July 17, 2018, Plaintiff made numerous attempts to be allowed to participate in the college and tutor programs. (*Id.*) He submitted numerous CDCR 22 request forms to Defendants Mondet and Bracamonte, the Inmate Assignments Office, Plaintiff's work supervisor, and Plaintiff's correction counselor Defendant Masterson, requesting that he be allowed to participate in the college and tutor programs.  (Doc. No. 52 at 21.)  Plaintiff also made numerous unsuccessful attempts to gain physical access to the Facility "C" Education Compound to discuss his available options for participating in the programs.  (Doc. No. 1 at 11.)

On August 23, 2018, Plaintiff explained to Defendant Self that his mental illness was being exacerbated by witnessing all of the violence during his working hours. (Doc.

No. 52 at 21.) Defendant Self reported to the Reasonable Accommodation Panel ("RAP"), including Defendant Santana, that he had determined there was no potential for injury or other serious harm regarding Plaintiff's reasonable accommodation request. (*Id.*)

On August 27, 2018, Plaintiff's clinician offered an evaluation recommending that Plaintiff be placed in a work assignment with limited interaction with others. (*Id.*) On September 18, 2018, Defendant Santana issued a RAP response, denying Plaintiff's reasonable accommodation request. (*Id.* at 22.)

On September 25, 2018, Plaintiff's clinician authored another medical memo recommending again that Plaintiff be placed in a job assignment with limited interaction with others. (*Id.* at 22.) Plaintiff then requested that his reasonable accommodation request be reconsidered. (*Id.*) Defendant Santana informed Plaintiff that his specific job change request was being denied because he was not on the tutor assignment waiting list but told Plaintiff he would be accommodated in his current work assignment. (*Id.*)

On November 8, 2018, Defendants Covello and Santana issued the Second Level Response partially granting Plaintiff's RAP Response appeal, re-stationing Plaintiff inside the housing unit. (*Id.* at 23.) Plaintiff was not accommodated as arranged, and Defendant Santana failed to respond to Plaintiffs request to be accommodated. (*Id.*) On December 6, 2018, Plaintiff spoke to Defendant Covello, and Defendant Covello stated he would "fix the problem." (*Id.*)

On January 28, 2019, Plaintiff's annual review classification hearing was held by the UCC, and Plaintiff was added to the literacy tutor assignment waiting list. (*Id.*) On February 2, 2019, Plaintiff was reassigned from his ADA inmate assistant position to a literacy tutor position. (*Id.*)

## II.   PROCEDURAL HISTORY

Plaintiff brought suit on September 6, 2018, alleging seven claims against multiple defendants. Specifically, Plaintiff brought (1) a discrimination claim under the Americans with Disabilities Act; (2) a discrimination claim under the Rehabilitation Act; (3) a discrimination claim under the Equal Protection Clause;  (4) a Due Process claim; (5) a

claim under deprivation of state-created liberty interests; and, (6) a violation of Free Speech claim as to all Defendants Voong, Murphy, Paramo, Juarez, Mondet, Bracamonte, Mendez, Bonilla, and Khder; and (7) a claim of failure to lawfully administer, train, supervise, and discipline only as to Defendants Voong, Murphy, Paramo, Juarez, Mondet, Bracamonte, and Bonilla. (Doc. No. 1 at 22-24.) On January 18, 2019, Defendants filed a Motion to Dismiss as to Plaintiff's fourth, fifth, and sixth causes of action. (Doc. No. 19.) On February 19, 2019, Defendants Murphy and Khder later joined the Motion to Dismiss.  (Doc. Nos. 25, 41.)  In response, on February 11, 2019, Plaintiff filed a Motion for Leave to File Amended Complaint, and a Notice of Voluntary Dismissal of Fourth and Fifth Causes of Action in Initial Complaint.  (Doc. No. 24.) On August 5, 2019, the Court recommended Defendants' Motion to Dismiss be granted in part, and Plaintiff's Motion for Leave to File an Amended Complaint be granted. (Doc. No. 43.) The Court order adopted in part the Report and Recommendation, granting in part and denying in part Defendants' Motion to Dismiss, and granting Plaintiff's Motion for Leave to File an Amended Complaint. (Doc. No. 45.)

On October 21, 2019, Defendants filed the pending Motion to Dismiss as to the Equal Protection claim and Motion to Strike Plaintiff's punitive damages claim. (Doc. No. 49.) In response, on December 2, 2019, Plaintiff filed a Motion for Leave to File Third Amended Complaint and a Response in Opposition to Defendants' Motion to Dismiss on December 27, 2019. (Doc. Nos. 52, 54.) In Plaintiff's Motion for Leave to File Third Amended Complaint, Plaintiff added Defendants P. Covello, J. Santana. B. Self, S. Masterson, and D. Coon. (Doc. No. 52 at 4.) Also in his Motion for Leave, Plaintiff voluntarily abandoned the claim of failure to lawfully administer, train, supervise, and discipline, and added a claim of Defendant's unlawful customs policies, and practices as to Defendants Paramo, Juarez, Mondet, Bracamonte, Bonilla, Covello ("Supervisory Defendants." (Doc. No. 52 at 29, 32.)

## III.   LEGAL STANDARD

**A.**    **Rule 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6), also referred to as a motion to dismiss, permits a party to bring a motion arguing that a complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). More specifically, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, *supra*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim meets this requirement when the facts pled "allow . . . the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Id.* at 677 (citing *Twombly*, *supra*, 550 U.S. at 557). Although a claim need not be probable on its face, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with a defendant's liability" do not equate to a facially plausible claim. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678. This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

C.   **Standards Applicable to *Pro Se* Litigants in Civil Rights Actions**

Where, as here, the plaintiff appears *pro se* in a civil rights suit, the Court also must be careful to construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Garmon v. Cnty. of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016). A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies cannot be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissal without leave to amend is not an abuse of discretion where amendment would be futile).

## IV. DISCUSSION

### A. Defendants' Motion to Dismiss the Equal Protection Claim

Defendants seek the dismissal of Plaintiff's Equal Protection claim, arguing Plaintiff fails to state a claim for which relief may be granted. (Doc. No. 49 at 6.) Defendants argue that Plaintiff fails to show that the named Defendants were responsible for assigning similarly situated EOP inmates to positions in an educational or work-incentive program, while also denying Plaintiff the same opportunities. (*Id.* at 15).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Plaintiff's case is premised on a "class of one" theory, "where the plaintiff alleges that [h]e has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To "be considered similarly situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects." *Warkentine v. Soria,* 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (quoting *U.S. v. Moore,* 543 F.3d 891, 896 (7th Cir. 2008). Courts have recognized "that the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the distinction, rather than the underlying government action." *Gerhart v. Lake Cty. Mont.*, 637 F.3d 1013, 1023 (9th Cir. 2010). "A class of one plaintiff

must show that the discriminatory treatment 'was intentionally directed just at him, as opposed to being an accident or a random act.'" *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis,* 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks and citation omitted; emphasis in original). To withstand a Motion to Dismiss, "§ 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.,* 158 F.3d 1022, 1026 (9th Cir. 1998) (citations omitted).

Here, Plaintiff alleges that he was "intentionally excluded from participating in the RJDCP Voluntary Education Program college and tutor programs." (Doc. No. 54 at 16). Defendants contend Plaintiff has failed to establish a causal connection between the named Defendants' actions and the alleged discriminatory treatment. (Doc. No. 49 at 15-16). Plaintiff has not adequately pleaded an Equal Protection claim as to any of the named Defendants because Plaintiff has not adequately pleaded he is "similarly situated" to other EOP inmates.

### 1. "Similarly Situated" Standard for an Equal Protection Claim

To adequately plead an Equal Protection claim under a "class of one" theory, Plaintiff must allege he has been treated differently than others similarly situated and "his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects." *Warkentine v. Soria,* 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (quoting U.S. v. Moore, 543 F.3d 891, 896 (7th Cir. 2008). More specifically, Plaintiff and the individuals he is claiming are "similarly situated" to him "must be similar in the respects pertinent to the state's policy." *Taylor v. San Diego County,* 800 F.3d 1164, 1169 (9th Cir. 2015). In other words, Plaintiff must be "equally capable for the purpose at issue." *Hansen v. Rimel,* 104 F.3d 189, 190 (8th Cir. 1997). It is imperative that Plaintiff and the other named EOP inmates are "similarly situated" "so that the factor motivating the alleged

discrimination can be identified . . . ." *Arizona Dream Act Coal v. Brewer,* 757 F.3d 1053, 1064 (9th Cir. 2014) (citation omitted).

### a. Defendant Khder

Plaintiff alleges Defendant Khder's discrimination is evidenced by Khder stating it is "too hard to coordinate college classes and EOP groups" and "[EOP participants] are too hard to work with." (Doc. No. 52 at 27). Defendant Khder also allegedly stated "It doesn't matter if Mr. Holestine is a professor and had completed a doctorate, he is not going to be enrolled in a college program without a 10.0 TABE score." (Doc. No. 46 at 10.)  Further, Plaintiff alleges Defendant Khder deliberately refused to comply after the UCC provisionally approved Plaintiff to participate in the VEP college program. (Doc. No. 52 at 27.) During the relevant time period, "an EOP inmate with an 8.0 TABE reading score was allowed by Defendant Khder to register for college courses." (*Id*. at 24.) Plaintiff argues "other similarly-situated EOP inmates were treated differently than he was treated" because ". . . other EOP inmates were allowed to participate in the college and tutor programs despite their placement in the EOP and without regard to their TABE reading scores." (Doc. No. 54 at 16).

### b. Defendant Bonilla

Plaintiff also alleges an Equal Protection violation against Defendant Bonilla. Plaintiff contends the First Level Response ("FLR") and Second Level Response ("SLR") for Plaintiff's inmate appeal "contain numerous intentional falsehoods and/or reckless disregard for the truth, made by Defendant Bonilla, to make it falsely appear that Plaintiff was not otherwise qualified to participate in the college and tutor programs . . . ." (*Id.* at 25.) More specifically, "Defendant Bonilla falsely states in the FLR that Plaintiff failed to provide any evidence, documentation, or information that would support his appeal. When in fact, Plaintiff produced all of his academic records . . . which clearly demonstrated that he was qualified to participate in the college and tutor programs." (*Id.*) Further, "Defendant Bonilla falsely states in the FLR and SLR that the only TABE score on record for Plaintiff was the 9.9 grade level score. When in fact, the original TABE score of 12.9 grade level

was also on record in Plaintiff's CDCR files." (*Id.*) Defendant Bonilla was "responsible for ensuring that each qualified EOP inmate had an equal opportunity to participate in these programs" and "other similarly situated inmates were being allowed to participate in these CDCR/RJDCF academic and work incentive programs" while Plaintiff was not. (*Id.* at 27-28.)

### c. Defendants Juarez and Paramo

Plaintiff also argues an Equal Protection claim as to Defendants Juarez and Paramo. Defendants Juarez and Paramo were "responsible for identifying each RJDCF EOP inmate who was qualified to participate in these academic and work incentive programs . . . ." (*Id.*) Plaintiff alleges "Defendants Paramo [and] Juarez . . . intentionally denied Plaintiff's Inmate Appeal . . . based on the erroneous and outdated 9.9 TABE reading score, and intentionally acquiesced in Defendant Khder's other discriminatory conduct." (*Id.* at 27.) Further, Plaintiff argues that "other similarly situated RJDCF EOP inmates were being treated differently than Plaintiff during the same relevant time period. Notwithstanding their placement in the EOP units, and without regard to their TABE reading scores of less than 10.0 grade level . . . ." (*Id.*)

### d. Defendants Bracamonte and Mendez

In his Complaint, Plaintiff also points to Defendants Bracamonte and Mendez for discrimination under an Equal Protection claim. Plaintiff believes Defendant Bracamonte and Mendez' circumstantial evidence of discrimination is shown by their failure to approve him for a literacy tutor position and removing Plaintiff from the VEP college assignment list after Plaintiff received a 12.9 TABE reading score and after he reported his previous college and work experience. (*Id.* at 19.) Plaintiff submitted a written request to Defendant Bracamonte that Plaintiff be scheduled a special review hearing to consider his job change request, and Defendant Bracamonte did not respond. (*Id.*) "Upon information and belief, Defendant[] Bracamonte . . . [was] . . . arranging for other RJDCF EOP and other inmates to be scheduled for special UCC review hearings throughout the year, anytime these other inmates were eligible for a 'program review,' during the same relevant time period in which

[he] required Plaintiff to wait until his annual review hearing." (*Id.* at 28). Further, Plaintiff contends "during the same relevant time period in which Defendants Bracamonte [and] Mendez . . . had refused to approve Plaintiff to participate in these academic and work incentive programs at his UCC review hearings, these same Defendants were approving other similarly situated EOP inmates to participate in these same programs during their own UCC review hearings." (*Id.*)

### e.  Defendants Masterson and Coon

In his Motion for Leave to File a Third Amended Complaint, Plaintiff also contends Defendants Masterson and Coon violated the Equal Protection clause of the Fourteenth Amendment. Plaintiff pleads that Defendants Coon and Masterson "intentionally refused to schedule Plaintiff for an appropriate UCC hearing to consider [his healthcare] chronos and Functional Evaluations issued by Plaintiff's mental health treatment team." (*Id.* at 27.) More specifically, after Plaintiff's clinician recommended that Plaintiff should be placed in a work assignment with limited interaction with others, Defendants Coon and Masterson stated that Plaintiff had to wait until his next scheduled classification hearing to consider this healthcare chrono. (*Id.* at 20-21.) Further, "upon information and belief, Defendants Coon [and] Masterson . . . were . . . arranging for other RJDCF EOP and other inmates to be scheduled for special UCC review hearings all throughout the year, anytime these other inmates were eligible for a 'program review,' during the same relevant time period in which they required Plaintiff to wait until his annual review hearing." (*Id.* at 28.)

### f.  Legal Sufficiency of Named "Similarly Situated" Individuals

As pleaded, Plaintiff attempts to name several EOP inmates whom Plaintiff contends he is "similarly situated" with to establish an Equal Protection "class of one" claim against the named Defendants. Here, Plaintiff has alleged he and the other group of inmates are "similarly situated" because all of the named inmates are also housed in the EOP. (*Id.* at 36.) However, to survive a Motion to Dismiss an Equal Protection claim, Plaintiff and the group being compared to him "must be similar in the respects pertinent to the State's policy." *Taylor v. San Diego County,* 800 F.3d 1164, 1169 (9th Cir. 2015). To show

whether Plaintiff is "similarly situated" to other EOP inmates, Plaintiff must plead he "is equally capable for the purpose at issue." *Hansen v. Rimel,* 104 F.3d 189, 190 (8th Cir. 1997). Further, to "be considered similarly situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects." *Warkentine v. Soria,* 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (quoting *U.S. v. Moore,* 543 F.3d 891, 896 (7th Cir. 2008). From the facts alleged, Plaintiff argues Defendants Khder, Bonilla, Bracamonte, Mendez, Paramo, Juarez, Masterson, and Coon have intentionally treated Plaintiff differently from others similarly situated.

In the memorandum regarding EOP accessibility to general population prison programs, the letter states "EOP IPs are eligible for all prison programs and activities so long as the Interdisciplinary Treatment Team ("IDTT") individually determines that the program or activity is consistent with the Inmate-patient's overall mental health treatment . . . ." (Doc. No. 54 at 69.) According to Plaintiff's pleadings, the IDTT endorsed his request to enroll in the college program and to be assigned as a literacy tutor. (Doc. No. 1 at 8.) Here, it seems that Plaintiff has pleaded via the IDTT that he is capable of participating in the college programs without his treatment rendering him ineligible. However, absent being endorsed by the IDTT and participating in the EOP, Plaintiff has not sufficiently pled he is "similarly situated" to other named EOP inmates "so that the factor motivating the alleged discrimination can be identified." *Arizona Dream Act Coal v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014) (citation omitted).

Plaintiff's pleadings are missing sufficient factual information regarding EOP inmates such as: similar treatment plans, mental conditions, academic credentials, schedules, or enrolled college courses. "In other words, the other group[] of prisoners that Plaintiff[] suggests are 'similarly situated' [could be] . . . dissimilarly situated in a number of significant respects." *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1019 (S.D. Cal. 2006). Further, to "be considered similarly situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects." *Warkentine v. Soria,* 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016)

(quoting *U.S. v. Moore,* 543 F.3d 891, 896 (7th Cir. 2008). Plaintiff has failed to allege he and the other EOP inmates are "arguably indistinguishable" thus, Plaintiff has not sufficiently pled an Equal Protection claim against Defendants Khder, Bonilla, Bracamonte, Mendez, Paramo, Juarez, Masterson, or Coon. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008).

## 2. Defendant Santana

Plaintiff added Defendant Santana to his Motion for Leave, alleging Defendant Santana "intentionally refused to schedule Plaintiff for an appropriate UCC hearing to consider [his healthcare] chronos . . . issued by Plaintiff's mental health treatment team." (Doc. No. 52 at 27.) Defendant Santana, the Associate Warden and ADA Coordinator at the RJDCF, denied Plaintiff's reasonable accommodation request for a work assignment change to a literacy tutor position after Plaintiff's clinician "recommended that he should be placed in a work assignment with limited interaction with others." (*Id.* at 22.) Shortly after denying Plaintiff's reasonable accommodation request, Defendant Santana "informed [Plaintiff] that his specific job change request was being denied because he was not on the tutor assignment waiting list." (*Id.*) However, Defendant Santana indicated that he would request that Plaintiff be added to the tutor assignment waiting list, and in the meantime, "Plaintiff was going to be accommodated in his current ADA inmate assignment work assignment." (*Id.*) About three weeks later, "Plaintiff submitted a written request to Defendant Santana and notified him that he was not being accommodated as arranged," and Defendant Santana did not respond to this request. (*Id.* at 23.)

Here, Defendant Santana denied Plaintiff's job change request because he was not on the tutor assignment waiting list and therefore could not be assigned as a literacy tutor. The Supreme Court holds that "the class-of-one theory of equal protection . . . is simply a poor fit in the public employment context." *Engquist*, 553 U.S. at 605. This is because "employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id.* at 604. Being assigned as a

literacy tutor is a discretionary action, and therefore precludes a "class of one" Equal Protection claim against Defendant Santana.

/ / /

/ / /

### 3. Defendant Self

Plaintiff alleges newly added Defendant Self "used trickery and deceit in responding to Plaintiff's reasonable accommodation request." (Doc. No. 52 at 21.) After Plaintiff submitted his reasonable accommodation request due to his difficulties performing his work duties, Defendant Self asked Plaintiff if any inmates were threatening to assault him. Plaintiff then explained to Defendant Self that his mental health was the issue, and not violence by others. (*Id.*) Defendant Self then "reported to the Reasonable Accommodation Panel ("RAP") that he had determined there was no potential for injury or other serious harm regarding Plaintiff's reasonable accommodation request." (*Id.*) Plaintiff alleges "Defendant Self lacked the professional training and medical expertise to propound such an opinion." (*Id.*) Plaintiff has failed to allege Defendant Self was responsible for Plaintiff being (1) "intentionally treated differently from others similarly situated, and (2) "there [was] no rational basis for the difference in treatment." *Olech,* 528 U.S. at 564. Therefore, Plaintiff has failed to state a cognizable Equal Protection claim against Defendant Self.

### 4. Defendant Mondet and Covello

Plaintiff's allegations as to Defendant Mondet and newly named Defendant Covello are also insufficient to survive a Motion to Dismiss. Plaintiff has alleged Defendants Mondet and Covello were "aware of Defendant Khder's unfair discriminatory practices towards Plaintiff" and they "intentionally acquiesced in this unfair and unequal treatment that Defendant Khder was engaging in." (Doc. No. 52 at 29.) This "bald allegation of impermissible motive . . . is conclusory and is therefore not entitled to an assumption of truth." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009). Thus, Plaintiff once again has not sufficiently "demonstrated that [he] has been intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech,* 528 U.S. at 564.

### 5. Defendants Voong and Murphy

Plaintiff has not adequately pled an Equal Protection claim against Defendants Voong and Murphy. Plaintiff alleged Defendants Voong and Murphy, in denying Plaintiff's inmate appeal, "acknowledged that Plaintiff was otherwise qualified to participate in the college and tutor programs. However, they held that his placement in the EOP and/or his 'therapeutic activities' took precedent over these other programs that he wanted to participate in at the RJDCF." (Doc. No. 52 at 20.) It is unnecessary to analyze the "rational basis" prong of the Equal Protection claim because Plaintiff has not adequately pointed to "similarly situated" individuals. Nonetheless, for Equal Protection claims arising under the "class of one" theory such as this one, Plaintiff must allege there was no "rational basis for the difference in treatment" when Defendants denied Plaintiff participation in the voluntary college program. *Olech,* 528 U.S. at 564. Here, Defendants' "rational basis" for the distinction in treatment may be evidenced by Defendants Voong and Murphy stating, "Plaintiff's 'therapeutic activities' took precedent over these other programs." (Doc. No. 54 at 16.) To that end, ". . . equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Fcc v. Beach Commc'ns,* 508 U.S. 307, 313 (1993). The Court will uphold a "statutory classification . . . against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* Further, "[t]o prevail on the rational basis element, a 'class of one' plaintiff must 'negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Wilson,* 2009 U.S. Dist. LEXIS 93282, 2009 WL 3233879, at 8 (quoting *Lauth,* 424 F.3d 631, 634 (7th Cir. 2005)). Here, Plaintiff has not adequately alleged that Defendants acted with ill will or because of Plaintiff's mental illness; therefore, Plaintiff's therapeutic activities taking precedence over the college program is reasonable.

Accordingly, the Court RECOMMENDS Defendants' Motion to Dismiss regarding Plaintiff's Equal Protection Claim be GRANTED with leave to amend.

**B.      Defendants' Motion to Dismiss all Claims Against Defendants Voong and Murphy**

Defendants argue that claims against Defendants Voong and Murphy should be dismissed because Plaintiff "expressly premises his claims against those Defendants on their alleged failure to investigate the allegations in his administrative appeal." (Doc. No. 49 at 7.) Plaintiff contends that "it is immaterial that their liability is premised on their failure to investigate the allegations in Plaintiff's administrative appeal." (Doc. No. 54 at 17.)

Defendants Voong and Murphy denied Plaintiff's inmate appeal, and, in turn, Plaintiff alleges that Defendants "failed to undertake a fact specific investigation to gather significant information from qualified experts to determine what constituted a reasonable accommodation for Plaintiff's mental disability." (*Id.* at 20.) Defendants Voong and Murphy's reaction to Plaintiff's inmate appeal cannot be the sole basis of liability for Plaintiff's claims. "[A prison] grievance procedure is a procedural right only; it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993). Further, "because inmates have no constitutional right to a prison grievance system, the actions of the prison officials in reviewing his internal appeal cannot create liability under § 1983." *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003). Accordingly, Plaintiff's claims against Defendants Voong and Murphy do not have a constitutional basis for liability.

The Court RECOMMENDS that Defendants' Motion to Dismiss Plaintiff's claims against Defendants Voong and Murphy be GRANTED based on Defendants' liability being premised on their failure to investigate Plaintiff's administrative appeal.

**C.     Defendants' Motion to Strike Punitive Damages Under the Rehabilitation Act and the Americans with Disabilities Act**

Defendants' seek to strike Plaintiff's punitive damages claim under the ADA and RA, arguing punitive damages are not available under Title II of the ADA or § 504 of the RA. (Doc. No. 49 at 14.) Importantly, Plaintiff contends he is not seeking punitive damages under the RA and ADA. (Doc. No. 54 at 13.) The Supreme Court has ruled that "punitive damages may not be awarded in a private action brought under 202 of the ADA and 504 or the Rehabilitation Act." *Barnes v. Gorman,* 536 U.S. 181, 183 (2002). For this reason alone, the Court would recommend granting the Defendants' Motion to Strike. However, the Court does not need to reach this conclusion because Plaintiff voluntarily abandoned punitive damages under the RA and the ADA. In Plaintiff's Second Amended Complaint "SAC", he seeks "punitive damages in the amount of $50,000 dollars each against Defendants . . . for their willful, intentional, malicious, wanton, and/or conscious disregard of plaintiff's legal rights." (Doc. No. 46 at 19). In Plaintiff's Motion for Leave to File Third Amended Complaint, Plaintiff has amended the aforementioned punitive damages claim and Plaintiff now seeks "exemplary damages against each named Defendant found to have willfully, intentionally, wantonly, and/or consciously disregarded Plaintiff's legal rights under the Fourteenth Amendment . . . ." (Doc. No. 52 at 34.) Accordingly, Defendants' substantive arguments for Motion to Strike the punitive damages under the RA and ADA are moot.

The Court RECOMMENDS that Defendants' Motion to Strike Plaintiff's punitive damages under the RA and the ADA be DENIED AS MOOT based on Plaintiff voluntarily amending his punitive damages request under the RA and ADA.

**D.     Plaintiff's Motion for Leave to File a Third Amended Complaint**

Plaintiff has filed a Motion for Leave to File a Third Amended Complaint under Rule 15(a).  (Doc. No. 52.)  Plaintiff seeks to clarify the deficiencies in the Second Amended Complaint and an opportunity to address legal arguments raised in Defendants' Motion to Dismiss.  (*Id.* at 2.) Having reviewed the Complaint, the Court recommends

Plaintiff be granted Leave to Amend consistent with the Court's ultimate Order on the pending Motion to Dismiss.

Rule 15(a)(1) of the Federal Rules of Civil Procedure allows a party to amend its pleadings once as a matter of course within "21 days of serving it," or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a [motion to dismiss], whichever is earlier." The Ninth Circuit has noted "on several occasions . . . that the 'Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F[ed]. R. Civ. P., by freely granting leave to amend when justice so requires.'" *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986) (quoting *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (citations omitted)). Thus, "[R]ule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citation omitted).

Based on the procedural history of this case, Plaintiff filed his response to Defendants' motion under Rule 12(b) within the time frame directed by the Court. (Doc. No. 53.) Defendants' non-opposition to Plaintiff's motion also bears upon the Court's recommendation here. The Court RECOMMENDS that Plaintiff's Motion for Leave to File a Third Amended Complaint be GRANTED.

### E.  Plaintiff's Motion for Leave to Exceed Page Limits

Plaintiff seeks to exceed the Southern District Court's page limit for pro se prisoner complaints by three pages to meet the requirements to state a plausible claim. "Given the district court's inherent power to control their dockets, whether to grant leave to exceed the page limits set forth in the Civil Local Rules appears to be at the full discretion of the court." *Traylor Bros., Inc. v. San Diego Unified Port Dist.,* No. 08-cv-1019-L(WVG), 2012 U.S. Dist. LEXIS 40977, at *6 (S.D. Cal. Mar. 26, 2012) (citing *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008). Due to only the slight increase in pages, in exercising the Court's discretion, the Court grants Plaintiff's motion to exceed the page

limit by three pages in compliance with Civl. R. 7.1(h). The Court RECOMMENDS that Plaintiff's Motion for Leave to Exceed Page Limits be GRANTED.

## V.   CONCLUSION

Based on the foregoing, this Court RECOMMENDS that:

1.      Defendants' Motion to Dismiss (Doc. No. 49) is GRANTED with regard to Plaintiff's Equal Protection claim. Thus, the Court RECOMMENDS that Plaintiff's Equal Protection claim is DISMISSED from this case with prejudice.

2.      Defendants' Motion to Strike (Doc. No. 49) be DENIED IN PART AS MOOT with respect to Plaintiff's punitive damages claim.

3.      Plaintiff's Motion for Leave to File Third Amended Complaint (Doc. No. 52) be GRANTED.  Plaintiff should be advised that the Third Amended Complaint he files shall not include punitive damages under the Rehabilitation Act and the Americans with Disabilities Act.

4.      Plaintiff's Motion for Leave to Increase Page Limit (Doc. No. 52) be GRANTED.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

**IT IS ORDERED** that no later than **August 23, 2020** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." **No reply briefs in response to the Objections will be accepted.**

**IT IS SO ORDERED.**

DATED: **July 23, 2020**

Hon. William V. Gallo
United States Magistrate Judge

18-CV-2094-AJB(WVG)